**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**CHARLES BRYANT**                                                                                          **PLAINTIFF**

**V.**                                              **NO. 3:15CV00292-JTR**

**CAROLYN W. COLVIN,**                                                                                   **DEFENDANT**
**Acting Commissioner,**
**Social Security Administration**

**ORDER**

Plaintiff, Charles Bryant, applied for Title II benefits and Title XVI benefits on December 17, 2012, alleging a disability onset date of May 25, 2012. (Tr. at 21). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 28). The Appeals Council denied Coleman's request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Bryant has requested judicial review. The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

For the reasons stated below, the Court[1] affirms the decision of the Commissioner.

**I.   The Commissioner's Decision:**

The ALJ found that Bryant had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 23). The ALJ found at Step Two that Bryant had the following severe impairments: fractured leg, status posts ORIF (Open Reduction Internal Fixation), history of gout, and diabetes mellitus. *Id.* At Step Three, the ALJ determined that Bryant's

---

[1] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

impairments did not meet or equal a listed impairment. (Tr. at 24). Before proceeding to Step Four, the ALJ determined that Bryant had the residual functional capacity ("RFC") to perform the full range of medium work. *Id.* Next, the ALJ found that Bryant is capable of performing past relevant work as a warehouse worker/general laborer. (Tr. at 27). The ALJ made an alternate finding at Step Five. Considering Bryant's age, education, work experience, and residual functioning capacity, she concluded that there are jobs that exist in significant numbers in the national economy that Bryant could perform. (Tr. at 28). Consequently, the ALJ found that Bryant was not disabled. *Id*.

## II. Discussion:

A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.

B.  Bryant's Argument on Appeal

Bryant argues that substantial evidence does not support the ALJ's finding that he can perform past relevant work. Bryant asserts that because the ALJ erred in finding Bryant's subjective complaints less than credible, he also erred in determining the RFC. Reviewing the entire record, the Court finds that the ALJ's determination was supported by substantial evidence.

The ALJ is required to consider the familiar *Polaski* factors in evaluating the credibility of the claimant's subjective complaints. 20 C.F.R. § 404.1529. Those factors are: (a) the claimant's work history; (b) the claimant's daily activities; (c) the duration, frequency and intensity of the pain; (d) precipitating and aggravating factors; (e) dosage, effectiveness and side effects of medication; and (f) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is not required to discuss methodically each *Polaski* consideration, so long as the ALJ acknowledges and examines those considerations before discounting the claimant's subjective complaints. *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). Subjective complaints "may be discounted if there are inconsistencies in the evidence

as a whole, and the ALJ may properly rely upon discrepancies between [a claimant's] allegations of pain and her treatment history, medicinal selections, and daily activities in disregarding her subjective complaints." *Davis v. Apfel*, 239 F.3d 962, 968 (8th Cir. 2011).

Bryant alleged that he has leg pain that bothers him 24 hours a day due to fractures sustained in a motorcycle accident. (Tr. at 46, 195, 197). He indicated that his leg pain prevents him from working. (Tr. at 43-44). He stated that he walks with a cane since the accident. (Tr. at 37). A review of the medical record does not support such disabling complaints of pain.

After the May 25, 2012 accident, Bryant had immediate ORIF surgery on his left tibia/fibula. (Tr. at 25, 251-59, 302). On June 5, 2012, x-rays revealed excellent alignment and fixation of the fractures, and Bryant reported to Dr. R. Edward Cooper, M.D., that he was doing much better. (Tr. at 335). Three months later, Dr. Cooper examined him and noted that the incisions were well-healed and Bryant had excellent ROM of the knee. (Tr. at 326). In December 2012, Bryant reported that he had tried to return to work but experienced pain and swelling. (Tr. at 324). Dr. Cooper observed the swelling but told him to return to activities as tolerated. *Id.* On February 12, 2013, Bryant said he was getting better and Dr. Cooper allowed him to resume full work activities. (Tr. at 353).

After a treatment gap of almost a year, Bryant returned to Dr. Cooper on January 30, 2014 with occasional leg pain and Dr. Cooper suggested surgery to remove the locking screws. (Tr. at 398-399). Dr. Cooper performed a surgical removal of the screws in May 2014. (Tr. at 418). On June 27, 2014, Bryant denied he was in distress and his ROM and

gait were within normal limits.  (Tr. at 429-30).  He had normal straight-leg raises and normal flexibility.  *Id.*  On July 23, 2014, Bryant reported that he was walking better and happy with the surgery, in spite of mild swelling and tingling.  (Tr. at 415-16).  Dr. Cooper told Bryant he could return to normal activities.  (Tr. at 416).

After Bryant reported a very swollen left ankle and arthritic changes in his feet, his primary care physician, Dr. Michael Tedder, M.D., diagnosed him with chronic and acute gout.  (Tr. at 341-42).  He prescribed Allpurinol and ordered a Decadron injection.  (Tr. at 348-49).  The record indicates that Dr. Tedder continued to treat the gout with Allpurinol through June 1, 2015.  Dr. Tedder did not place any work restrictions on Bryant, or prescribe him a cane.

In December 2013, Dr. Tedder diagnosed Bryant with acute onset type II diabetes mellitus.  (Tr. at 378, 382).   Bryant's A1C level was elevated at 17.9 and Dr. Tedder continued him on Janument and Glupizide.  (Tr. at 375).  Bryant's treatment for diabetes thereafter was conservative and the condition was well-controlled, although he did report blurred vision, which resulted in surgery to remove cataracts.  (Tr. at 389, 408-12).  Bryant indicated he was pleased with the surgery and had satisfactory vision post-op.  (Tr. at 410).

It appears that Bryant responded well to both surgical intervention and prescription medication.  He said he typically only took aspirin, ibuprofen, or Advil for pain and did not report side effects from medication (Tr. at 26).  His doctors charted improvement following all surgeries.  Impairments that are controllable or amendable to treatment do not support a

finding of total disability.  *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

*Polaski* requires a review of daily activities.  Bryant lives alone and takes care of his personal needs.  (Tr. at 26).  He drives, shops, prepares meals, irons, does laundry, plays keyboard, listens to music, reads, and watches TV.  *Id*.  He visits with others and occasionally attends church.  *Id*.  Bryant's daily activities, response to treatment, and lack of functional restrictions undermine his claim of disabling impairments.  *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir. 2001)(acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility).  The ALJ's credibility findings are entitled to deference because they are supported by substantial evidence in the record.  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

Bryant contends that the RFC of medium work is not supported by substantial evidence because his subjective complaints do not provide for medium work.  (Pl. Brief at 10-11). The ALJ assigned proper value to Bryant's subjective complaints in making his RFC finding.  A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence.  *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011).  In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments.  *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).  The ALJ in this case weighed the credibility of the claimant, the medical evidence, and the effect of the combination of impairments in arriving at the RFC.  The determination that Bryant could

return to past relevant work at the medium level is well-supported.

### III. Conclusion:

There is substantial evidence to support the Commissioner's decision that Bryant could return to past relevant work at the medium level. The finding that Bryant was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is affirmed. The case is dismissed, with prejudice.

IT IS SO ORDERED this 4th day of October, 2016.

_____
UNITED STATES MAGISTRATE JUDGE